**BALDWIN, ESTATE OF, In Re**

Probate Court, Cuyahoga Co

Niman & Buss, Cleveland, for Charles A. Niman and The Central United National Bank, exceptors.

Wesley L. Grills, Lorain, for certain heirs, exceptors.

Carl Shuler, Cleveland, for liquidator of The United Trust Company.

**OPINION**

By BREWER, J.

Carrie Baldwin died a resident of Cleveland, Ohio, September 12, 1930. Her will was admitted to probate, September 29, 1930, and letters testamentary were duly issued to The Union Trust Company.

At that time there was on deposit in The Union Trust Company a total of $386,510.53. There was additional cash available in the amount of about $40,-000.00 besides income. The executor invested $399,875.00 in United States Treasury Certificates, due September 15, 1931. A will contest was filed November 21, 1930. The will was sustained in the Common Pleas Court and in the Court of Appeals and on March 1, 1933, the Supreme Court overruled a motion by the contestants to direct the Court of Appeals to certify its record.

The Union Trust Company failed and on February 16, 1934, the superintendent of banks, as liquidator thereof, filed a final account. Charles A. Niman, and The Central United National Bank, administrators de bonis non with the will annexed, filed exceptions to said final account, which have been heard and submitted for decision.

The first exception attacks the item of February 2, 1934, of $381.38, as statutory commissions for services performed by the superintendent of banks while in charge of the liquidation of The Union Trust Company. The burden of proof in cases of exception to disbursements for which credit is claimed in an account, is on the person or institution accounting. No authority has been cited here for the superintendent of banks to perform any function in the administration of an estate or trust for which executors, administrators, or trustees are appointed in the Probate Court. Without doubt, a mere physical protection of estate assets until an administrator de bonis non is appointed or a successor trustee is appointed to receive and administer said assets. is a proper function of the state superintendent of banks, in the event of the failure of a trust company. The superintendent of banks, however, has no power under the law to perform any of the functions for which the defunct trust company in its days of life has been qualified by the Probate Court. He is not in any sense appointed by the Probate Court and that court has not the direct and definite control of the superintendent of banks which is essential to the proper administration of estates. I am of the opinion that any function performed by the superintendent of banks in the administration of an estate is of doubtful validity and that certainly he is not entitled to charge compensation for any attempted service, either as an individual or on behalf of the trust company. It is rather amazing that an officer of the state should attempt to perform any function of an executor, administrator or testamentary trustee, since the statutes under which he acts, namely, §§710-89, 710-89a and 710-95 GC, do not specifically authorize him to do so, and further in view of the fact that under Article 4, Sec. 8 of the Constitution of Ohio, the Probate Courts have exclusive jurisdiction of the administration of all testamentary matters and therefore, the legislature, even if it had attempted to give the superintendent of banks

power to continue the administration of testatmentary matters begun by a defunct bank in his charge, would have been without power to do so. It is a very singular thing that in all the legislation on this subject, enacted by tne last legislature, and theretofore, in this state there has never been any provision, even attempting to authorize the superintendent of banks to perform any testamentary function incident to the process of liquidating a defunct trust company.

The law provides for the appointment of an administrator de bonis non or a new trustee, as the case may be, to complete the administration of testamentary matters, where the person or institution having commenced the administration, dies, resigns or is removed. Certainly, The Union Trust Company, being defunct and closed, is not such an institution as the legislature contemplated should administer estates when it authorized trust companies to do so. I find no provision of law authorizing the superintendent of banks to administer estates.

It is contended in regard to this exception, that if an administrator de bonis non with the will annexed had been appointed at once upon the failure of The Union Trust Company, then such administrator would have performed the services and would have been entitled to the fee so that the estate would suffer no loss by the allowance of the item claimed by the liquidator, and furthermore, that the general creditors of the bank should not have to pay the expense of the services rendered. The answer to such contentions is that the only services which the conservator or liquidator can properly and legally perform are those brought about or required by reason of the failure of the trust company and that for those services the estate should surely not be required to pay. When a depositor deposits his money in a bank which is authorized by law to do a trust business, he does so charged with the knowledge that at least a portion of the property in the control and custody of that banking

institution is trust property and that a failure of the trust company will necessarily entail some expense incident to the separation of assets of a trust character from those applicable to the payment of depositors. Of course, such expense will finally fall upon the stockholders of the trust company where it properly belongs. The first exception must be sustained.

The second exception attacks the claimed credit of $19,171.92 shown as statutory fee for The Union Trust Company "9-13-30 to 2-25-33, offset against impounded deposits". When The Union Trust Company closed its door on February 27, 1933, there was a balance on deposit in a savings account of $428,537.16, to which was added interest to June 15, 1933, of $5,892.38, making a total of $434,429.54, from which the claimed statutory commission of $19,-171.92 was deducted on July 25, 1933. The liquidator paid a 35% dividend on the balance, after deducting said claimed compensation, that is, on $415,-257.62. The balance now admitted by the trust company to be on deposit is $269,917.45 plus $198.71. It is admitted that the $19,171.92 is the full amount of compensation to which the Union Trust Company would have been entitled if it had completed the administration of the estate. For such charge in full there can, therefore, be no justification.

The question for the court on this exception is whether or not The Union Trust Company is entitled to any statutory compensation or commission at this time and, if so, how much. The trust company did perform some of the necessary functions in the administration of this estate, for which it should be paid unless the loss arising from its having money of the estate on deposit in its banking department is a bar to its right thereto.

The second partial account filed September 22, 1932, discloses that the United States Treasury Certificates in which the executor had invested estate funds, were paid on September 15, 1931, in the full amount of $400,000.00. This fund was then deposited in large part, if not entirely, in the savings account where it remained when the trust company failed on February 27, 1933. Such deposit was authorized by §710-165 GC, which reads as follows:

"Mingling of property or securities, prohibited.—No property or securities received or held by any trust company in trust shall be mingled with the investments of the capital stock or other properties belonging to such trust company or be liable for its debts or obligations. Moneys pending distribution or investment may be treated as a deposit in the trust department, or may be deposited in any other department of the bank, subject in other respects to the provisions of law relating to deposit of trust funds by trustees and others."

The language and effect of that statute have been enunciated by the Supreme Court in **McDonald v Fulton, 125 Oh St 507** (1932). The court said at page 511:

"It is to be observed that deposit in an interest-bearing account is directed, which of course contemplates use of the fund by the bank, and the fiduciary therefore becomes a general creditor by the very force of the statute governing his action."

And again on the same page:

"It appearing then that the relationship established under statutory authority was that of debtor and creditor, the rights of the trustee with reference to the funds so deposited are no greater than or different from those of other general depositors, and upon liquidation of the bank they share proportionately in the distribution of the assets."

A careful reading of the statute and also of McDonald v Fulton, discloses no connection between the principles referred to and the question as to whether a trust company which has made such a deposit of trust funds in its own business and then fails, is entitled

to be paid for its services in the administration of said trust estate, without regard to the repayment of funds so lost.

In the case of **Candler, Admr. v Von Martels, 11 O. Dec. Rep. 744** (1892), the surety of a defaulting administrator, upon payment of the amount of the default, was held entitled to a set-off of the compensation which would have been due the administrator if he had properly administered the estate. At page 745, the court quoted, with approval, the following language from Woerner's American Law of Administration:

"The principle upon which compensation is refused is that where the estate has suffered loss by the dereliction of the executor or administrator, the loss will not be enhanced by allowance of commissions. But where the loss arising out of the misconduct is made up to the estate, so that the beneficiaries get the benefit of a vigorous and efficient administration, it seems neither just nor logical that a bonus should be granted to them in the shape of the commissions denied for the administrator, thus increasing the burden which in such cases usually falls upon the delinquent's sureties."

Statutory commissions of executors were provided for at the time of the qualification of The Union Trust Company, as executor in this case, by §10837 GC, now §10509-192. It reads:

"Commissions.—Executors and administrators may be allowed commissions upon the amount of personal estate collected and accounted for by them and of the proceeds of real estate sold by order of court to pay debts, or under directions of the will, which must be received in full compensation for all their ordinary services, as follows: for the first thousand dollars at the rate of six per cent; all above that sum, and not exceeding five thousand dollars, at the rate of four per cent, and all above five thousand dollars, at the rate of two per cent."

The emphasized words do not appear in §10509-192.

The language "and accounted for" in said statute has been construed in **Thurston v Ludwig, 25 C. C. (N.S.) 298** (1915) to mean "disbursed in the administration of the estate". In that case the court held that the Probate Court had authority to fix the compensation at a reasonable amount for the services rendered. A careful reading of the case, however, discloses that the failure of the first administrator to disburse the money was not due to the fact that it was tied up in his own business The funds in question had apparently been turned over to the new administrator.

In the case of **Overturf v Gerlach, 62 Oh St 127** (1900) it was held that compensation due an executor or administrator could not be attached until it had been allowed by the Probate Court. The court said at page 130, "by reason of maladministration he may be entitled to nothing, and nothing may be allowed him."

That an executor or administrator is not entitled to statutory compensation in all cases is further indicated by §10506-36 GC, which provides that upon failure to account for thirty days after notice to do so, no compensation will be allowed unless the court finds the delay to have been necessary and reasonable, and further by §10506-74, formerly §10679 GC, which provides that an executor or administrator who is found guilty of having concealed, embezzled, conveyed away or of withholding assets of the estate, is not entitled to compensation.

While The Union Trust Company cannot be held individually responsible, except as a debtor, for the moneys deposited in its own business, because the statute, §710-165 GC, permitted such deposit, it is my opinion that it is not entitled to compensation for the administration of this estate, until it has accounted for the funds so deposited. Such compensation as it is hereafter found to be entitled to, will therefore

be payable only from the last of the funds impounded in its own business when, as and if said impounded funds are paid in full or to a sufficient extent to reach in part the compensation allowed. To hold otherwise, would wipe out the last vestige of trust responsibility in this state where the trustee happens to be a banking institution. My conclusion on this exception recognizes a distinction between the case of an individual fiduciary who has deposited funds in a banking institution, with which he has no personal connection. which fails, and cases such as the one at bar, where the financial institution itself is acting as fiduciary and has deposited the money in its own business. The distinction, of course, arises from the fact that, as stated. the individual fiduciary had not profited by the deposit of the funds and, therefore. had no personal reason for either making the deposit in the first instance or retaining the funds in the failing banking institution, and there is a further distinction in the fact that the individual fiduciary does not have the same means of ascertaining the true financial condition of the banking institution within which he has deposited trust funds that that institution itself has.

The second exception will be sustained and the trust company ordered to pay to the administrators, in cash, $6,710.17, being the 35% dividend on the $19,171.92 withheld on account of compensation claimed, and the balance, being $12,461.75, in the form of a certificate for impounded funds. It will be authorized to apply the last of said impounded accounts, if they are ever paid in full, on any allowance hereafter made for its compensation in this case. It will be ordered to file an amended final account showing only the corrections herein ordered, within twenty days from the decree based on this opinion.

The third exception goes to the payment of $5,400 by The Union Trust Company to itself for compensation in collecting rents which are shown in its account to be impounded. For similar reasons, a similar ruling will be made as on the second exception, and the third exception sustained.

William Boyd, one of the heirs at law of the decedent in this case, represented by Wesley L. Grills, attorney, of Lorain, Ohio and Arthur Boyd, another of the interested parties also represented by Wesley L. Grills, each filed exceptions to the claim of The Union Trust Company to $19,171.92 compensation. These exceptions go to the same subject matter as that disposed of in the foregoing opinion, referred to as Exception No. 2, and the ruling thereon will be the same.

I reserve my ruling as to the amount of compensation to which The Union Trust Company will be entitled, when, as and if the impounded funds are paid in full or to such an extent as to make any portion of said assets applicable to their claim, in order to give counsel opportunity to present evidence on that phase of the case. It appears, at this time, clear that the gross statutory compensation for the administration of this estate cannot be computed upon the appraised value of the estate for the reason that not all the assets collected by The Union Trust Company have been accounted for by it and the administrators de bonis non have neither collected nor paid out the impounded portion of said assets.